## A94A0115. SHELTON v. THE STATE.
(447 SE2d 115)

BLACKBURN, Judge.

Following a trial by jury, the appellant, Joseph Shelton, was convicted of operating a motor vehicle under the influence of alcohol, in violation of OCGA § 40-6-391 (a) (1).[1] His motion for new trial was subsequently denied, and this appeal followed.

The evidence viewed in the light most favorable to the jury's verdict shows that at approximately 10:50 p.m. on January 6, 1992, Shelton was seen driving a Chevrolet Camaro in a parking lot of a

---

[1] The trial court granted Shelton's motion for directed verdict as to Counts 2 and 3 of the indictment, which charged him with driving with unlawful alcohol concentration in violation of OCGA § 40-6-391 (a) (4), and leaving the scene of an accident in violation of OCGA § 40-6-270, respectively. The trial court denied Shelton's motion for directed verdict on Count 1, driving a motor vehicle under the influence of alcohol to the extent that he was a less safe driver.

Gwinnett County apartment complex. Shelton drove the vehicle into the rear of a truck parked in the parking lot, resulting in heavy damage to the truck and forcing the truck over an adjacent curb. After assessing the damage to the vehicle, Shelton left the scene in the vehicle, leaving an injured passenger, Paul Woodall, who later fled on foot to an apartment within the complex. Officer Beining of the Gwinnett County Police Department was summoned to the scene and during his investigation, was given a description of both the driver and passenger. A check of the vehicle's license plate number, which was supplied by a witness, revealed that Shelton was the registrant of the vehicle.

When Officer Beining located Woodall and Shelton in their apartment within the complex at approximately 1:00 a.m., Woodall was extremely intoxicated and had a fresh lip injury as described by an eyewitness. Although Woodall denied knowledge of the incident, he was subsequently identified by an eyewitness as the passenger in the suspect vehicle, and arrested. Shelton was also in the apartment and was intoxicated and appeared to have been awakened from sleep. A strong odor of alcohol emanated from his person, his eyes were glassy and bloodshot, his speech was slurred, and he had a fresh injury to his right arm. In an effort to confirm whether Shelton was the driver of the vehicle, the officer began questioning him but did not advise him of his *Miranda* rights prior to questioning. Officer Beining testified at the motion to suppress hearing that Shelton was not told that he was not free to leave, was not placed in handcuffs, and his access to leave was not blocked. Shelton did not present any evidence to rebut this testimony at the hearing.

Shelton denied driving his vehicle that night and initially informed the officer that he had stayed at home drinking and became inebriated while at home. Upon further questioning, Shelton changed his story and admitted that he had been drinking with some friends, including Woodall, at a night club and a restaurant, but he could not say which friend drove that evening. He further stated that upon his arrival at home at approximately 10:30 p.m., he went to bed. Shelton accompanied the officer outside to the police car where he was identified by an eyewitness as the driver of the Camaro at the time of the collision and was arrested. When the Camaro was subsequently located by another officer, the windshield was cracked and an empty beer container and three unopened beer containers were found in the vehicle. An intoximeter test administered at 2:32 a.m. revealed that Shelton had a blood-alcohol content of .19 grams.

1. Shelton asserts that the trial court erred in refusing to suppress his pre-*Miranda* statement made to the investigating officer in which he admitted that he had been drinking before the collision. Although Shelton was questioned in his apartment and on the stairs

leading from the apartment prior to his arrest, "[t]here is no indication that the defendant had been taken into custody or otherwise deprived of his freedom of action in any significant way by action of the [officer] when he made his [incriminating] statement to the police. [Accordingly,] [t]he defendant's statement was admissible as a statement made prior to any in-custody interrogation." (Citations and punctuation omitted.) *Wilson v. State*, 208 Ga. App. 812, 813 (2) (432 SE2d 211) (1993).

2. Next, Shelton argues that the evidence produced at trial was insufficient to support the jury's verdict that he was under the influence of alcohol to the extent that he was a less safe driver. Specifically, Shelton asserts that the prosecution failed to present any evidence that he was intoxicated or manifested any signs of intoxication while driving his vehicle at the time of the incident. We disagree.

Shelton admitted that he became inebriated while drinking with some friends. When questioned by Officer Beining hours after he had struck the parked truck, he manifested signs of intoxication and an odor of alcohol permeated his skin and clothing. He did not consume any alcohol when he returned home since he contended that he went to bed and to sleep immediately upon arrival, and any rational trier of fact could infer that his elevated blood-alcohol level four hours after the collision stemmed from the alcohol that he consumed earlier in the evening. " 'No fact is better known or publicized than [the fact] that alcohol slows the reflexes, dulls the thinking processes, slows the impulse stimuli and reaction thereto. . . .' [Cits.]" *Menendez v. Jewett*, 196 Ga. App. 565, 569 (396 SE2d 294) (1990).

While OCGA § 40-6-391 (a) (1) makes it unlawful for a person to drive or be in actual physical control of any moving vehicle under the influence of alcohol to the extent that it is less safe for the person to drive, there is no requirement that the person actually commit an unsafe act. *Moss v. State*, 194 Ga. App. 181, 182 (390 SE2d 268) (1990). However, in this case, Shelton did commit an unsafe act when he drove his vehicle into the rear end of a parked truck with such force to push the truck onto the adjacent curb. Considering the combination of facts involved in this case, a rational trier of fact could reasonably have found proof of Shelton's guilt beyond a reasonable doubt of the offense charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *King v. State*, 205 Ga. App. 825 (2) (423 SE2d 429) (1992).

3. Lastly, Shelton argues that the trial court erred in charging the jury on the presumptions codified in OCGA § 40-6-392 (b) when the only matter for jury resolution was whether he was operating the vehicle under the influence of alcohol to the extent that he was a less safe driver. He maintains that such a charge was extremely prejudicial and was erroneous as a matter of law since OCGA § 40-6-392 was

amended on July 1, 1991, to substitute .08 grams for .10 grams in subparagraphs 2 and 3.

While Shelton is correct that the trial judge incorrectly charged the statute as it existed prior to the 1991 amendment, Shelton has not shown that he has been harmed by the trial court's instruction to the jury that they could infer that Shelton was under the influence of alcohol based upon his blood-alcohol content. The trial court's charge did not invade the province of the jury. See *King v. State*, 200 Ga. App. 511 (3) (408 SE2d 509) (1991). In this case, unlike in *King*, the evidence, including Shelton's admission that he was inebriated, showed that Shelton was under the influence of alcohol. Consequently, this enumeration is without merit.

*Judgment affirmed. Birdsong, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JULY 12, 1994 —
RECONSIDERATION DENIED JULY 28, 1994 —

*C. Alan Mullinax*, for appellant.

*Gerald N. Blaney, Jr., Solicitor, Richard E. Thomas, Assistant Solicitor*, for appellee.