A08A0160. MONAHAN v. THE STATE.
(665 SE2d 387)

PHIPPS, Judge.
Nichol Marie Monahan was convicted of reckless driving, less safe DUI, and child endangerment by DUI. On appeal, she contends that incriminating evidence she gave to an officer before he advised her of *Miranda* warnings was inadmissible; that probable cause did not support her arrest; and that the counts of less safe DUI and child endangerment by DUI should have been merged for sentencing. Because Monahan has failed to show merit in any contention, we affirm.

1. Monahan contends that the trial court erred by not excluding evidence she claims was illegally obtained.

> When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to up-

hold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them.[1]

The state showed at the suppression hearing (which was consolidated with the bench trial) that shortly after 10:00 p.m. on September 22, 2005, the manner in which Monahan was driving a Jeep Grand Cherokee attracted the attention of several other motorists. One such motorist called 911, reported the driving, and stated that he would follow the Jeep. The motorist described to the 911 operator that the Jeep had pulled out in front of the car ahead of him, almost hitting that car, his car, and other vehicles; that the Jeep then went "from one side to the other" and "all over the place" amongst other cars and trucks; that it had run over cones and curbs alongside the road; that one of the Jeep's tires had flattened; and that the Jeep's driver was apparently "completely drunk." Further, the motorist reported to the 911 operator that he had followed the Jeep into a particular residential subdivision; that the Jeep had lost part of its fender when it struck a mailbox; that the Jeep had barely missed other mailboxes; that the Jeep had pulled into a driveway of a residence; and that a female driver and a small child had exited the Jeep.

The motorist returned to the entrance of the subdivision to wait for law enforcement to arrive. About five to ten minutes later, two deputies of the county sheriff's office, responding to the dispatch about a possibly intoxicated driver of a Jeep with a flat tire, met the motorist. By this time, another motorist who also had barely avoided a collision with the Jeep had joined them. The motorists and a passenger reported to the officers what they had witnessed before they all went to Monahan's residence.

One of the officers, specially trained in DUI investigations, noted the flat tire on the Jeep parked in the driveway and then knocked on Monahan's front door, which was made of glass. Through the door, the officer saw a child inside. As Monahan walked to the front door, the officer observed her unsteady gait. When Monahan opened the door, the officer noted her red, watery eyes. Monahan stepped outside at the officer's request. As the two talked, the officer detected a slur in Monahan's speech and a strong odor of alcohol on her breath. Monahan told the officer that she had not been driving the Jeep, but after the officer related to her what had been reported to

---

[1] *In the Interest of A. A.*, 265 Ga. App. 369, 370 (1) (593 SE2d 891) (2004) (citation and punctuation omitted); see *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

him, she admitted that she had driven the vehicle home. Monahan told the officer she had driven the Jeep home "a long time" ago, but after the officer placed his hand on the Jeep's hood and asked her why the hood was still warm, she admitted that she had been home only about ten to fifteen minutes. Monahan told the officer that she had consumed two alcoholic beverages before driving home and that she had not consumed any alcohol since then. Monahan complied with the officer's request to perform several field sobriety evaluations. Based upon his observations of Monahan and her poor performance during the field sobriety evaluations, the officer determined that she had been driving under the influence of alcohol to the extent she was a less safe driver. The officer handcuffed her and read her the implied consent notice. Monahan refused to submit to a state-administered chemical test of her blood, breath, or urine.

Monahan was the sole defense witness. She recounted that on the evening in question, she and her ten-year-old child had eaten dinner at a restaurant, where she also consumed two alcoholic beverages and water. Not until she and her child were already riding home in the Jeep did she realize that a tire was flat. She testified that the flat tire made it difficult for her to control the Jeep, but that she did not feel comfortable stopping on the side of the road because it was dark; she had her child with her; she had noticed someone driving behind her; and she was not far from home. When she arrived home, she took Tylenol PM, which made her sleepy, and then lay down. Monahan testified that her ability to perform the field sobriety evaluations had been affected by her consumption of the alcoholic beverages, exhaustion, the Tylenol PM, and having recently lay down. She admitted that she had driven the Jeep from the restaurant to her home, that she had driven close to the back of a vehicle stopped at an intersection, and that she had refused a state-administered chemical test of her blood, breath, or urine. However, she claimed that she had not been an unsafe driver.

Monahan's attorney sought to exclude the portion of the officer's testimony and the police video concerning what transpired after Monahan stepped out of her house. He argued that when Monahan exited her house she was entitled to *Miranda* warnings because no reasonable person would have felt free to leave or otherwise disregard the officer's request to step outside. He pointed out that *Miranda* warnings were not given until after Monahan had provided incriminating evidence against herself in response to the officer's requests and questions. The trial court rejected this evidentiary challenge.

> *Miranda* protections adhere when an individual is (1)
> formally arrested or (2) restrained to the degree associated

with a formal arrest. Where an accused is neither in custody nor so restrained as to equate to a formal arrest, any statements made to an investigating officer are made under noncustodial circumstances and *Miranda* warnings are not required. To determine if an individual is in custody for purposes of *Miranda*, courts must inquire into whether that person's freedom of movement was restrained to a degree associated with a formal arrest. This inquiry involves an examination of the circumstances surrounding the questioning to determine whether a reasonable person would have felt at liberty to terminate the interrogation and leave.[2]

On appeal, Monahan does not claim that she was coerced into answering the officer's knock; she contends that her "freedom of action was clearly nullified by [the officer's] commands" to step outside her house. She recounted at trial what happened after she walked to her front door, "I cracked the door, and the cops held the door open . . . and told me to come outside." Monahan recalled, "He said, 'Step outside with me, please,' and then, 'Come with me.' Those were his exact words." Monahan testified that she complied because she did not feel that she had any choice, and that once outside, she did not feel that she could leave or go back into her house.

Likewise, the investigating officer testified that after Monahan came to the door, "[s]he opened the door." However, he denied both holding open the door and commanding Monahan out of her house. He recounted, "I asked her to step out of the house," and she complied.

A recording of Monahan's initial encounter with the officer captured the officer saying to her:

How are you doing? — Do what? — Good. Can I get you to come out? You the one driving? — No? Who's driving your car? Oh, OK. Come on out here and talk to me, if you don't mind. Your neighbor was? So, all these people out here who saw you is just gonna lie, right? — No, all these people that followed you. Come on out here for me if you don't mind.

Although Monahan testified that she did not feel that she could leave or go back inside her house, the determination of whether one

---

[2] *Bolden v. State*, 278 Ga. 459, 463 (3) (604 SE2d 133) (2004) (citation omitted); accord *Price v. State*, 269 Ga. 222, 225 (3) (498 SE2d 262) (1998) (noting that appellate decisions have routinely held that *Miranda* warnings must precede a request to perform a field sobriety test only when the suspect is "in custody").

is in custody for purposes of *Miranda* does not depend upon the subjective view of the person being interrogated or evaluated.[3] "[T]he relevant inquiry in determining whether one is in custody is how a reasonable person in the suspect's position would perceive his or her situation."[4] Here, the evidence, construed in the light most favorable to the trial court's ruling,[5] authorized a finding that the investigating officer's request was not with any language, tone, or accompanying gesture such that a reasonable person would have believed that his or her freedom of movement was restrained to a degree associated with a formal arrest. And Monahan cites no other evidence to support her argument that she was then formally arrested or restrained to the degree associated with a formal arrest. Because Monahan has failed to show that the officer's request rendered her in custody for purposes of *Miranda*, we find no merit in her argument that the trial court erred by failing to exclude evidence of what occurred after she complied with the officer's request on the ground that she was not then given *Miranda* warnings.[6]

2. There is no merit in Monahan's contention that she was arrested without probable cause. This contention is based upon her argument that the officer illegally obtained evidence after she stepped outside, which we have rejected.[7]

The arresting officer was specially trained in DUI investigation. He was guided to Monahan's home by a motorist who had observed Monahan's erratic driving and then followed her to a residence, where Monahan and a child exited the Jeep. The officer noted that the vehicle parked in the residential driveway matched the one described in the dispatch. Having approached the front door, the officer saw a child inside the home and noted that Monahan was unsteady on her feet when she walked to answer his knock. By the time Monahan stepped outside, the officer had reasonable suspicion to detain her for investigative purposes.[8] Monahan admitted to the officer that she had consumed alcoholic beverages away from home, then driven the Jeep to her residence about ten to fifteen minutes earlier, and had not thereafter consumed an alcoholic beverage. The officer detected Monahan's slurred speech and a strong odor of alcoholic beverage on her breath. He also observed her fail field

---

[3] *Hardin v. State*, 269 Ga. 1, 3 (2) (494 SE2d 647) (1998).

[4] Id. (footnote omitted).

[5] See *Vansant*, supra; *In the Interest of A. A.*, supra.

[6] See *Vaughn v. State*, 261 Ga. 686, 687 (2) (410 SE2d 108) (1991); *Poole v. State*, 270 Ga. App. 432, 433-434 (1) (a) (606 SE2d 878) (2004).

[7] See Division 1, supra.

[8] See *State v. Jones*, 287 Ga. App. 259, 260-261 (651 SE2d 186) (2007).

sobriety evaluations. There is no question that Monahan's arrest was supported by probable cause.[9]

3. Monahan contends that the trial court erred by not merging the less safe DUI[10] count into the child endangerment by DUI[11] count for sentencing purposes. However, the Code section that proscribes DUI less safe and child endangerment by DUI unambiguously provides otherwise: "The offense of endangering a child by driving under the influence of alcohol or drugs shall not be merged with the offense of driving under the influence of alcohol or drugs for the purposes of prosecution and sentencing."[12] Furthermore, there is no merit in Monahan's argument that, pursuant to the rule of lenity, the less safe DUI count should be merged into the child endangerment by DUI count.

> The rule of lenity applies where two or more statutes prohibit the same conduct while only differing with respect to their prescribed punishments. According to the rule, where any uncertainty develops as to which penal clause is applicable, the accused is entitled to have the lesser of the two penalties administered.[13]

In the instant case, however, the two Code provisions at issue do not prohibit the "same conduct" because endangering a child by DUI requires an additional element of "transporting in a motor vehicle a child under the age of 14 years."[14] Moreover, there is no uncertainty as to which penal clause is applicable. The Code provision proscribing child endangerment by DUI expressly sets forth the applicable penal clause.[15]

*Judgment affirmed. Barnes, C. J., and Johnson, P. J., concur.*

---

[9] See *Brown v. State*, 269 Ga. 830, 831-832 (2) (504 SE2d 443) (1998) (probable cause requires merely a probability – less than a certainty but more than a mere suspicion or possibility); *Steinberg v. State*, 286 Ga. App. 417, 419-420 (2) (650 SE2d 268) (2007).

[10] OCGA § 40-6-391 (a) (1) (a person shall not drive or be in actual physical control of any moving vehicle while under the influence of alcohol to the extent that it is less safe for the person to drive).

[11] OCGA § 40-6-391 (l) (a person who violates this Code section while transporting in a motor vehicle a child under the age of 14 years is guilty of the separate offense of endangering a child by driving under the influence of alcohol or drugs).

[12] Id.; see *Slayton v. State*, 281 Ga. App. 650, 653-654 (2) (637 SE2d 67) (2006).

[13] *Henry v. State*, 284 Ga. App. 893, 894, n. 2 (645 SE2d 32) (2007) (citations and punctuation omitted).

[14] OCGA § 40-6-391 (l); compare *Dixon v. State*, 278 Ga. 4 (596 SE2d 147) (2004).

[15] OCGA § 40-6-391 (l) (pertinently stating, "An offender who is convicted of a violation of [this offense] shall be punished in accordance with the provisions of subsection (d) of Code Section 16-21-1, relating to the offense of contributing to the delinquency, unruliness, or deprivation of a child").

DECIDED JULY 10, 2008.

*Billy L. Spruell, Jon D. Haskin*, for appellant.
*David L. Cannon, Jr., Solicitor-General, David M. McElyea, Assistant Solicitor-General*, for appellee.