ROBERT L. GORE, JR., D/B/A VILLAGE DEVELOPMENT AND VILLAGE DEVELOP-
MENT GROUP, INC., PLAINTIFFS v. ASSURANCE COMPANY OF AMERICA,
ZURICH AMERICAN INSURANCE COMPANY, MARYLAND CASUALTY COM-
PANY AND CALLAHAN & RICE INSURANCE GROUP, INC., DEFENDANTS

No. COA10-295

(Filed 7 December 2010)

### 1. Insurance— builder's risk policy—failure to comply with reporting provisions—not a waiver

A *de novo* review revealed the trial court did not err by grant-
ing summary judgment in favor of Defendants in plaintiffs' suit to
recover $87,000 under a builder's risk insurance policy. An
insurer's acceptance of reports or premium payments following
an insured's failure to comply with the reporting provisions, spec-
ified as conditions of coverage, did not constitute a waiver of the
condition. Plaintiffs breached the conditions of the policy such
that no coverage existed under the policy.

### 2. Insurance— builder's risk policy—notice of cancellation not applicable to breach of conditions of coverage

Although plaintiffs contended the trial court erred by grant-
ing summary judgment in favor of Defendants in plaintiffs' suit to
recover $87,000 under a builder's risk insurance policy based on
a failure to mail or deliver a notice of cancellation of the policy at
least fifteen days before the proposed effective date of cancella-
tion, plaintiffs' reliance on the notice provisions of N.C.G.S.
§ 58-41-15(b) was misplaced. The statute imposed an obligation
of notice only with respect to cancellation and had no application
with respect to a breach of the conditions of coverage.

### 3. Insurance— builder's risk policy—material misrepresentation

The trial court did not err by granting summary judgment in
favor of Defendants in plaintiffs' suit to recover $87,000 under a
builder's risk insurance policy. A material misrepresentation by

an insured may prevent recovery under the policy. Plaintiffs'
reporting of a property as a new start in August 2006, and then
again in August 2007, at a time when the construction had been
complete for nearly one year, constituted a willful and material
misrepresentation by plaintiffs.

**4. Insurance— builder's risk policy—agency—reporting
irregularities**

The trial court did not err by granting summary judgment in
favor of Defendants in plaintiffs' suit to recover $87,000 under a
builder's risk insurance policy. By its express terms, the insur-
ance on the property was dependent upon plaintiffs' payment of
premiums and submission of reporting forms. Plaintiffs' report-
ing irregularities abrogated the coverage under the policy.

Appeal by plaintiffs from orders entered 20 October 2009 by
Judge Jack A. Thompson in Cumberland County Superior Court.
Heard in the Court of Appeals 16 September 2010.

*McCoy Wiggins Cleveland & O'Connor PLLC, by Richard M.
Wiggins and Nicole Jones, for plaintiffs-appellants.*

*Manning Fulton & Skinner P.A., by Michael T. Medford, for
Callahan & Rice Insurance Group, Inc., defendants-appellees.*

*Dean & Gibson, PLLC, by Jeremy S. Foster and Michael G.
Gibson, for Assurance Company of America, Zurich American
Insurance Company and Maryland Casualty Company, defend-
ants-appellees.*

JACKSON, Judge.

Village Development Group, Inc. ("Village Development") and
Robert L. Gore, Jr., ("Gore") appeal from 20 October 2009 orders
granting summary judgment in favor of Callahan & Rice Insurance
Group, Inc. ("Callahan") and Assurance Company of America, Inc.
("Assurance") related to Village Development's law suit to recover
$87,000.00 from Callahan and Assurance pursuant to a builder's risk
insurance policy. For the reasons stated herein, we affirm.

Village Development is a North Carolina corporation, with its
principal place of business in Cumberland County. It is engaged pri-
marily in the development and construction of residential properties.
Gore is the president and sole shareholder of Village Development.

**GORE v. ASSURANCE CO. OF AM.**

[208 N.C. App. 239 (2010)]

In the mid-1990s,[1] Village Development obtained a "builder's risk" insurance policy for the purpose of protecting its construction projects against the risk of loss. Policy number 90604639 ("the policy") was issued by Assurance. Callahan, an independent insurance agency, acted as the agent for Assurance. According to an affidavit submitted by Callahan in support of its motion for summary judgment, a builder's risk policy is "intended to cover buildings owned by the policyholder while they [are] under construction. The buildings covered by the policy change[] over time based on reports submitted to Assurance by the policy holder[.]"

The coverage provided pursuant to the terms of Gore's policy was to "pay for direct physical *loss* to Covered Property from any Covered Cause of Loss." (Emphasis in original). A "covered property" was defined as "[p]roperty which has been installed, or is to be installed . . . *which you have reported to us.*" (emphasis added).

Because the builder's risk policy contemplated coverage for a builder's fluctuating inventory, the terms of the policy included "reporting provisions" as a condition of coverage. The reporting provisions contained in Gore's policy were replaced by reporting terms set forth in a "Monthly Rate Endorsement" to the policy. Specifically, Section E3, addressing when coverage began and ended pursuant to the policy, provided that coverage would end "when you stop reporting the location." Section E4 of the monthly rate endorsement set forth the reporting requirements and specified that the reporting of covered properties was to occur on a monthly basis:

a. Each month, you will report to us the *total estimated completed value* of all Covered Property for each location that was in your inventory during the previous month. Inventory includes both locations you started during the previous month and previously reported locations that were still in inventory at any time during the previous month. For the purpose of these reports, a location is started when you first put any building materials (including the foundation) on the construction site.

(Emphasis in original). The language of subparagraph a, therefore, established two categories of covered properties: (1) new starts and (2) previously-reported starts.

---

1. The affidavit of Clara Koonce, an insurance agent with Callahan, states that the policy originally was issued "in or about 1994," but the sworn affidavit signed by Gore indicates that the policy originally was issued on 14 August 1996.

The monthly rate endorsement also provided the method by which the monthly premium due pursuant to the policy was to be calculated:

b. You must pay premiums based on the *total estimated completed value* of the Covered Property using the rate we furnish. You must submit a report and premium payment for a location for each month in which that location is in inventory, beginning with the month in which that location was started. You must send your premium payment with the report for the reported location(s) to be covered.

(emphasis in original). The monthly rate endorsement specified the manner in which the monthly reports were to be made, providing that an insured "must make these reports on the form we provide."

Reports and premium payments that were not received on the form provided by Assurance or by the last day of the month in which the report was due "[were] late." The policy also addressed the consequences of late reporting and late premium payments:

e. Our acceptance of a late report and premium payment for a location will not create coverage for a *loss* that occurred before we received the late report and premium payment. Our acceptance of a report and premium payment does not waive or change any part of this policy nor stop us from asserting any right we have under the terms of this policy.

(Emphasis in original). The monthly rate endorsement further provided, "It is your responsibility to report accurately and on time."

In the event of a loss, the policy expressly provided that payment for a loss would be made only if all reports and premiums for the location had been received:

d. If, at the time of a *loss* on a location, we have not received all reports and premium payments that were due for that location, then we will not provide any payment for that *loss*. In addition, you must submit a report and premium payment for that location for the month in which the *loss* occurred, and we must receive that report and premium payment on time (i.e., by the last day of the month following the *loss*), or we will not cover that *loss*.

(Emphasis in original).

In August 2006, Village Development reported five separate locations as "new starts" on its monthly reporting form to Assurance, including Lot 9A of the Rivercliff subdivision, with the street address

2779 Rivercliff Road ("2779 Rivercliff").[2] The properties were reported and the premiums were calculated and paid for August and September 2006, consistent with the terms of the policy. For the months of November 2006 through July 2007,[3] Village Development neither reported any locations nor paid any premiums to Assurance. Gore's only justification or excuse for Village Development's failure to report properties or to pay premiums was that "[i]t seemed to be of no real significance."

On 9 October 2007, a reporting form for August 2007 was submitted, reporting three "new starts" located in the Rivercliff subdivision, including 2779 Rivercliff. When the August 2007 report was submitted, construction on 2779 Rivercliff had been complete for nearly one year. For the months of October, November, and December 2007, Village Development reported the three Rivercliff locations as "previous starts," calculated the premiums based upon the rate furnished by Assurance, and paid the premiums.[4] As reported by Village Development, the estimated completed value of 2779 Rivercliff was $230,000.00. The reporting forms and premium payments were accepted by Assurance.

On 15 December 2007, all three of the Rivercliff locations reported on the August 2007 reporting form, including 2779 Rivercliff, were destroyed by fire. Village Development notified Assurance of the loss and filed a claim as to each of the three locations in February 2008. Assurance denied Village Development's claim related to 2779 Rivercliff but paid approximately $143,000.00 to First South Bank, the mortgage holder for the property, pursuant to a loss-payee provision of the policy. Based upon Assurance's denial of the claim, Gore and Village Development (collectively "plaintiffs") filed suit.

On 6 November 2008, plaintiffs commenced a civil action to recover $87,000.00 pursuant to the policy related to the casualty loss that occurred at 2779 Rivercliff. Assurance, Zurich American

---

2. At deposition, Gore testified that 2779 Rivercliff was first reported as early as June 2005 and that Callahan issued a certificate of insurance for the property to First South Bank, the mortgage holder, shortly thereafter. The earliest reporting form for 2779 Rivercliff that appears in the record is the report for August 2006.

3. The record does not contain a monthly reporting form for the month of September 2007.

4. The record does not contain any documentation related to reporting or payment of premiums for the month of September 2007. This may be due to the fact that the August 2007 reporting form was submitted in October 2007.

Insurance Company, Maryland Casualty Company, and Callahan were named as Defendants. Assurance filed an answer on behalf of itself and asserted that Zurich American Insurance Company and Maryland Casualty Company incorrectly had been designated as Defendants. In its answer, Assurance denied that it was indebted to plaintiffs pursuant to the policy, but alleged that, in the event that it was determined to be indebted to plaintiffs, any amount owed should be offset by the amount paid to First South Bank. Assurance also asserted plaintiffs' failure to comply with the provisions of the policy as an affirmative defense. Callahan also filed an answer, denying that it was indebted to plaintiffs and asserting as defenses that, *inter alia*, plaintiffs had failed to state a claim upon which relief could be granted and plaintiffs had been contributorily negligent.

Plaintiffs, Assurance, and Callahan each moved for summary judgment. A hearing on the motions was held on 5 October 2009. On 16 October 2009, the trial court entered separate orders granting the motions for summary judgment in favor of Assurance and Callahan. Those orders then were filed with the Clerk of Superior Court on 20 October 2009. Plaintiffs appeal.

Plaintiff's sole argument is that the trial court erred in granting summary judgment in favor of Assurance and Callahan. We disagree.

The standard of review of a trial court's granting a motion for summary judgment is *de novo. Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) (citing *Builders Mut. Ins. Co. v. North Main Constr. Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006)). "On appeal, this Court views the record in the light most favorable to the non-moving party, drawing all reasonable inferences in the non-movant's favor." *Tyburski v. Stewart*, 204 N.C. App. 540, 543, 694 S.E.2d 422, 424 (2010) (citing *Gaskill v. Jennette Enters., Inc.*, 147 N.C. App. 138, 140, 554 S.E.2d 10, 12 (2001), *disc. rev. denied*, 355 N.C. 211, 559 S.E.2d 801 (2002)). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007).

Plaintiffs advance four reasons to support their argument that the trial court's grant of summary judgment was erroneous—waiver, lack of notice of cancellation, Assurance's presumed knowledge of its filings, and imputation of Callahan's conduct to Assurance. We address each of these in turn.

**[1]** Plaintiffs first argue that Assurance's unqualified, unconditional receipt of past-due payments constitutes a waiver of the conditions of coverage pursuant to the policy. We disagree.

Before addressing the substance of this argument, we note that plaintiffs' attempt to characterize the payments made between August and December 2007 as "past due payments" is a mischaracterization of those payments. Given the nature of the builder's risk policy and the monthly reporting requirements, the payments made in 2007 cannot be characterized as past-due payments, but rather, they were current payments due pursuant to the policy. The only payments that could be characterized as past-due payments would be the payments for the months of October 2006 through July 2007. Nothing in the record reflects that plaintiffs made any such past-due payments.

In North Carolina, the doctrines of waiver and estoppel " 'are not available to broaden the coverage of a policy so as to protect the insured against risks not included therein or expressly excluded' " from coverage. *Hannah v. Nationwide Mut. Fire Ins. Co.*, 190 N.C. App. 626, 631, 660 S.E.2d 600, 604 (2008) (quoting *Currie v. Insurance Co.*, 17 N.C. App. 458, 459-60, 194 S.E.2d 642, 643 (1973)). *See also Brendle v. Shenandoah Life Ins. Co.*, 76 N.C. App. 271, 276, 332 S.E.2d 515, 518 (1985) (holding that waiver and estoppel "cannot be used to create coverage which is nonexistent or expressly excluded from a policy"). Plaintiffs, by arguing for the application of the doctrine of waiver to the facts of this case, seek to expand the scope of their coverage—and thereby, Assurance's liability—pursuant to the policy. Our case law specifically prohibits that result.

North Carolina courts have declined to apply the doctrine of waiver to expand coverage pursuant to traditional types of coverage, such as a homeowner's insurance policy issued to protect against the risk of loss for one specific property and its contents. *See, e.g., Hannah*, 190 N.C. App. at 627, 660 S.E.2d at 601. As Assurance argues, the policy at issue in the case *sub judice* differs substantially from the more traditional types of insurance policies. The builder's risk policy, by its terms, is intended to provide coverage for fluctuating inventory and is dependent upon the insured's compliance with the periodic reporting requirements of inventory and the payment of premiums based upon those reports as set forth in the policy.

Applying the doctrines of estoppel and waiver to a policy containing mandatory reporting provisions as a condition of coverage—such as the builder's risk policy at issue here—presents a question

which North Carolina has not addressed specifically: whether an insurer's acceptance of reports or premium payments following an insured's failure to comply with the reporting provisions of a reporting policy constitutes a waiver of the condition. Other jurisdictions have answered this precise question, and their reasoning is persuasive.

In *Six L's Packing Co., Inc. v. Florida Farm Bureau Mut. Ins. Co.*, Florida Farm Bureau Mutual Insurance Co. ("the insurance company") denied a claim filed by the plaintiff, the owner of a tomato packing shed, to recover the value of the contents of the shed after a fire destroyed it and all of its contents in October 1967. 268 So. 2d 560, 561 (Fla. Dist. Ct. App. 1972), *opinion adopted*, 276 So. 2d 37 (Fla. 1973). Pursuant to the policy at issue there, the insured's failure to file monthly reports meant that the policy "cover[ed] only at the locations and for not more than the amounts included in the last report of values . . . filed prior to the loss[.]" *Id.* at 561-62 (emphasis removed). Notwithstanding this condition, the plaintiff's last report on file prior to the fire was for June 1967 and reflected the contents of the shed as "none." *Id.* at 561. Reports for July, August, and September 1967 were filed ten days after the fire. *Id.*

When the plaintiff appealed the trial court's grant of summary judgment in favor of the insurance company, the *Six L's* court examined the policy at issue and concluded that "[p]rovisions of this type have been held to create conditions going to *coverage* and *not* conditions or grounds of *forfeiture*." *Id.* at 563 (citations omitted) (emphasis in original). It then affirmed the trial court, holding that, "while an insurer may be estopped by its conduct from seeking a *forfeiture* of a policy, the insurer's *coverage* or restrictions on the *coverage* cannot be extended by the doctrine of waiver and estoppel." *Id.* (emphasis in original).

Other jurisdictions have reached the same result based upon similar reasoning. *See, e.g., Finger v. St. Paul Fire and Marine Ins. Co.*, 423 S.W.2d 460 (Tex. Civ. App. 1968) (holding that doctrines of waiver and estoppel do not apply to inventory reporting provisions of policy, such that insurer was entitled to summary judgment for insured's noncompliance with monthly reporting endorsement); *Southern Sash of Columbia v. U.S. Fidelity and Guar. Co.*, 525 So. 2d 1388 (Ala. 1988) (affirming trial court's award of partial recovery to insured because unambiguous language of insurance policy's value reporting clause limited insurer's liability as a consequence of late reporting and doctrine of waiver did not apply); *Dalton Buick v. Universal Underwriters Ins. Co.*, 512 N.W.2d 633 (Neb. 1994) (holding that

insurer was not estopped from denying full coverage after acceptance of premium because reporting clause unambiguously limited insured's recovery).

As these cases illustrate, the language of the policy determines the coverage—and, therefore, the insurer's liability—in the event of a loss that occurs following late or irregular reporting pursuant to a value reporting policy, much like the builder's risk policy at issue here. Because the provisions of a value reporting policy create conditions of coverage, rather than forfeiture, and because pursuant to North Carolina law the doctrines of waiver and estoppel " 'are not available to broaden the coverage of a policy so as to protect the insured against risks not included therein or expressly excluded' " from coverage, *Hannah*, 190 N.C. App. at 631, 660 S.E.2d at 604 (citation omitted), we now hold that an insurer's acceptance of reports or premium payments following an insured's failure to comply with the reporting provisions, specified as conditions of coverage, does not constitute a waiver of the condition.

In the case *sub judice*, the policy at issue specifies that the reporting provisions set forth in the monthly rate endorsement are additional conditions of coverage. Further, the policy also contains language addressing the consequences of both late and irregular reporting. Paragraph d plainly and unambiguously provides the consequences for irregular reporting: "If, at the time of a loss on a location, we have not received all reports and premium payments that were due for that location, then we will not provide any payment for that loss." Paragraph e expressly provides that acceptance of late reports and payments does not constitute a waiver of the conditions: "Our acceptance of a report and premium payment does not waive or change any part of this policy nor stop us from asserting any right we have under the terms of this policy." Like the policy at issue in *Six L's*, these provisions created "conditions going to *coverage* and *not* conditions or grounds of *forfeiture*." *Six L's*, 268 So. 2d at 563 (emphasis in original).

The record plainly establishes that plaintiffs breached the conditions of coverage. At his deposition, Gore readily admitted—and provided no excuse or justification for—the fact that, after 2779 Rivercliff was reported as a new start in August 2006, no reports were made and no premiums were paid for the months of November 2006 through July 2007. In addition to Gore's deposition testimony, the record plainly reflects that plaintiffs made no reports and paid no premiums during that same time period. Viewed in the light most favor-

able to and drawing all reasonable inferences in favor of plaintiffs, *Tyburski*, 204 N.C. App. at 543, 694 S.E.2d at 424, plaintiffs breached the conditions of the policy such that no coverage existed pursuant to the policy and Assurance was entitled to judgment as a matter of law.

**[2]** In addition to their waiver argument, plaintiffs contend that the trial court's grant of summary judgment was error because Assurance failed to mail or deliver a notice of cancellation of the policy at least fifteen days before the proposed effective date of cancellation as required by statute. *See* N.C. Gen. Stat. § 58-41-15(b) (2007) ("Any cancellation . . . is not effective unless written notice of cancellation has been delivered or mailed to the insured, not less than 15 days before the proposed effective date of cancellation."). This argument lacks merit. As the record reflects, there is no dispute between the parties as to whether the builder's risk policy was in full force and effect at the time of the loss. As discussed *supra*, this dispute is one of *coverage*, not one of forfeiture or cancellation. Accordingly, plaintiffs' reliance upon the notice provisions of North Carolina General Statutes, section 58-41-15(b) is misplaced, because the statute imposes an obligation of notice only with respect to cancellation and has no application with respect to a breach of the conditions of coverage.

**[3]** Plaintiffs next argue that the trial court's grant of summary judgment was error because Assurance is deemed to have knowledge of the contents of its official files such that, to the extent that plaintiffs reported 2779 Rivercliff both as a "new start" and as a "previously reported start," Assurance cannot now seek to avoid the policy based upon an alleged misrepresentation. This argument lacks merit.

It is well-settled in North Carolina that a material misrepresentation by an insured may prevent recovery pursuant to the policy. *Luther v. Seawell*, 191 N.C. App. 139, 144, 662 S.E.2d 1, 4 (2008); *Tharrington v. Sturdivant Life Ins. Co.*, 115 N.C. App. 123, 127, 443 S.E.2d 797, 800 (1994). In *Luther*, we determined that a representation is material when " 'the knowledge or ignorance of it would naturally influence the judgment of the insurer in making the contract[.]' " 191 N.C. App. at 144, 662 S.E.2d at 4 (quoting *Goodwin v. Investors Life Insurance Co. of North America*, 332 N.C. 326, 331, 419 S.E.2d 766, 769 (1992)).

Plaintiffs' reporting of 2779 Rivercliff as a new start in August 2006, and then again in August 2007, at a time when the construction had been complete for nearly one year, clearly constitutes a willful and material misrepresentation by plaintiffs. Pursuant to the policy,

GORE v. ASSURANCE CO. OF AM.

[208 N.C. App. 239 (2010)]

coverage for completed structures only is obtained through an "existing structure" endorsement, which plaintiffs did not have for 2779 Rivercliff at the time of the loss. In light of the fact that plaintiffs only could obtain coverage for a completed structure by means of an existing structure endorsement, Assurance's knowledge that 2779 Rivercliff had been a completed structure for nearly one year at the time it was reported in August 2007 likely would have "influence[d] the judgment of the insurer in making the contract[,]" regardless of whether plaintiffs reported it as a new start or a previously reported start. *Id.* Accordingly, plaintiffs' material misrepresentation of 2779 Rivercliff prevents recovery pursuant to the policy.

[4] Plaintiffs' final argument—that the conduct of Callahan, acting as agent for Assurance by issuing certificates of coverage on two separate occasions for 2779 Rivercliff, is imputed to Assurance—also lacks merit. The affidavit of Clara Koonce, an insurance agent with Callahan, submitted in support of Callahan's motion for summary judgment, includes an "Evidence of Property Insurance" form as an attachment. The evidence of property insurance form expressly provides, "THE POLICY IS SUBJECT TO THE PREMIUMS, FORMS, AND RULES IN EFFECT FOR EACH POLICY PERIOD." By its express terms, the insurance on the property is dependent upon plaintiffs' payment of premiums and submission of reporting forms. As discussed *supra*, plaintiffs' reporting irregularities abrogated the coverage pursuant to the policy.

For the reasons discussed herein, we affirm the trial court's 20 October 2009 orders granting summary judgment in favor of Assurance and Callahan.

Affirmed.

Judges ELMORE and STEPHENS concurs.