**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 29, 2016**

# In the Court of Appeals of Georgia

A16A1115. JACOBS v. THE STATE.                    PE-049 C

PETERSON, Judge.

Brian Evan Jacobs appeals from his conviction for DUI per se. He argues that the trial court erred in denying his motion to suppress (1) certain statements he made to police and (2) the results of a chemical testing of his blood. The trial court correctly concluded that Jacobs was not in custody when he made the statements in question and therefore the statements were not taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (86 S.Ct. 1602, 16 LE2d 694) (1966). The trial court also correctly rejected Jacobs' request to suppress the results of the blood test because Jacobs freely and voluntarily consented to the test. Therefore, we affirm the trial court's denial of Jacobs' motion to suppress and affirm his conviction.

"On appeal from a ruling on a motion to suppress, we construe the evidence most favorably to affirming the trial court's factual findings and judgment." *Brooks v. State*, 285 Ga. App. 624, 626 (647 SE2d 328) (2007). The trial court's application of the law to undisputed facts is subject to de novo review. *State v. Palmer*, 285 Ga. 75, 78 (673 SE2d 237) (2009) (citation omitted). However, "the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous." *Perez v. State*, 249 Ga. App. 399, 399-400 (547 SE2d 699) (2001) (citation omitted).

So viewed, the facts show that in April 2013, police received a report that a vehicle had struck a vehicle gate at an apartment complex. The responding officer found the exit gate stuck partially open, with car debris scattered around it. Within minutes, the officer located in the complex's parking lot an unoccupied truck with damage that appeared to match the debris he had found.

While the officer was running the truck's license plate, Jacobs' girlfriend approached the officer and inquired about Jacobs' well being. She said Jacobs had called her to say he was hurt and needed to go to the hospital. At some point, she also told the officer that she had seen Jacobs consuming alcohol at a restaurant before he drove to the apartment complex. The girlfriend called Jacobs, who was in her

2

apartment, and permitted the officer to speak with him by phone. Jacobs told the officer that he had been driving the truck. The officer asked Jacobs to come outside and speak with him. Jacobs initially was hesitant but agreed after the officer threatened to seek a warrant for his arrest.

Jacobs came outside and spoke to the officer. Jacobs said that he had tried to enter the complex via the exit gate because he could not get the entrance gate to open. Jacobs was limping and appeared to be injured but refused the officer's initial offer of medical attention. Jacobs appeared to the officer to be under the influence of alcohol, having an odor of alcohol on his breath.[1] He reported having consumed two drinks in a bowling alley that night, as well as drinking additional alcohol after returning to the apartment. The officer performed no field sobriety tests, explaining at the suppression hearing that he chose not to due to Jacobs' injuries.

Determining that Jacobs had been under the influence of alcohol when he struck the gate with his vehicle, the officer placed Jacobs under arrest and put him in handcuffs. The officer read Jacobs the Georgia Implied Consent Notice:

> Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose

---

[1] There is no video recording of Jacobs' encounter with police.

3

of determining if you are under the influence of drugs or alcohol. If you refuse this testing, your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year. Your refusal to submit to the required testing may be offered into evidence against you at trial. If you submit to testing and the results indicate an alcohol concentration of 0.08 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year. After first submitting to the required state tests, you are entitled to additional chemical tests of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit to the state administered chemical tests of your blood under the implied consent law? *See* OCGA § 40-5-67.1(b)(2). Jacobs verbally agreed to a blood test. Jacobs was transported to a fire station where a paramedic drew his blood. The results showed him to have a blood-alcohol concentration of 0.202. At no point during the encounter did the officer advise Jacobs of his rights pursuant to *Miranda*.

Jacobs moved to suppress his statements provided on the scene on the basis that he was not given *Miranda* warnings, and moved to suppress the results of the blood test on the basis that he did not freely and voluntarily consent to the test. After a pre-trial hearing at which the officer testified, the trial court denied both requests. The case proceeded to trial, and a jury convicted Jacobs on all charges. Jacobs filed a motion for new trial, which the trial court denied. Shortly thereafter, our Supreme

4

Court decided *Williams v. State*, 296 Ga. 817, 819 (771 SE2d 373) (2015), rejecting a rule automatically equating an affirmative response to the implied consent notice with actual consent to a search within the meaning of the Fourth Amendment. Based on that decision, Jacobs asked the trial court to reconsider its denial of his motion for new trial. The trial court issued a new order denying the motion for reconsideration, finding that although Jacobs was intoxicated at the time, he freely and voluntarily gave his consent to the blood test. We dismissed Jacobs' initial appeal as untimely, but the trial court then granted Jacobs leave to file an out-of-time appeal.

1. Jacobs first challenges the use of statements he made to police as taken in violation of *Miranda*. We disagree with his argument.

> Law enforcement officers are required to give *Miranda* warnings prior to questioning only where the subject is in police custody, having either been formally arrested or restrained to an extent associated with such an arrest. Where one has not been arrested, he will be considered to be in custody only under circumstances where a reasonable person in the same situation would perceive that he was deprived of his freedom of action in a meaningful way.

*Smith v. State*, 297 Ga. 667, 668 (2) (777 SE2d 453) (2015) (citations and punctuation omitted). A trial court must consider the totality of the circumstances to determine whether a reasonable person would believe he is not at liberty to leave. *Id.* at 668-69

5

(2). Factors indicating a defendant is not in custody include that the defendant voluntarily accompanied an officer to another location, that the officer told the defendant he was not under arrest or otherwise in custody, that the defendant was allowed to speak to others, and that the defendant was not handcuffed or otherwise restrained. *Id.* at 669-70 (2). "The issue of whether one is in custody for *Miranda* purposes is a mixed question of law and fact, and we will not disturb the trial court's determination unless it is clearly erroneous." *Parker v. State*, 307 Ga. App. 61, 65 (3) (704 SE2d 438) (2010) (footnote omitted).

Here, the trial court rejected the defense's *Miranda* argument because Jacobs was not in handcuffs when he made the statements, there was no evidence of flashing police lights, guns drawn or other officers present, and Jacobs was standing in a parking lot, not in jail or a patrol car. The trial court correctly concluded that, considering the totality of the circumstances, Jacobs was not in custody when he made the statements in question. "[R]oadside questioning during the investigation of a routine traffic accident generally does not constitute a custodial situation." *State v. Pastorini*, 222 Ga. App. 316, 317 (1) (474 SE2d 122) (1996). We also have held similar investigations to be non-custodial where a suspect was put through field sobriety tests in a parking lot, s*ee Parker v. State*, 307 Ga. App. 61, 65 (3) (704 SE2d

6

438) (2010), or asked to step out of her home, *see Monacan v. State*, 292 Ga. App. 655, 658-59 (1) (665 SE2d 387) (2008). Here, Jacobs voluntarily, albeit reluctantly, exited the apartment and walked down a set of stairs to speak with the officer. Jacobs was not handcuffed or otherwise restrained at that point. Although there is no evidence that the officer explicitly told him he was not under arrest, the officer did not tell him that he was under arrest, either.

This case is similar to *Sheldon v. State*, 214 Ga. App. 166 (447 SE2d 115) (1994), in which we held that a defendant was not in custody when he spoke to an officer investigating a vehicle accident that took place in an apartment complex parking lot. The officer located the defendant in his apartment at the complex and spoke to the defendant both in the apartment and on the stairs leading from the apartment as the officer escorted the defendant to the parking lot. *Id.* at 167-68 (1). The officer gave unrebutted testimony that the defendant was not told that he was not free to leave and was not placed in handcuffs, and that the defendant's access to leaving was not blocked. *Id.* at 167. Although the defendant was arrested after being identified by a witness, we held that his pre-*Miranda* statement given prior to the arrest was admissible as there was "no indication that the defendant had been taken

into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 168 (1) (citation and punctuation omitted).

Similarly, in *Monacan*, an officer knocked on the door of a DUI suspect reported by other motorists. 292 Ga. App. at 656 (1). The suspect opened the door and stepped outside at the officer's request. *Id.* The suspect testified that she did not think she could refuse the officer's request and that, once outside, she felt she could not go back inside. *Id.* at 658 (1). Noting the inquiry is an objective one, however, we rejected the defendant's argument. *Id.* at 658-59 (1). Able to review a recording of the police encounter, we said the evidence "authorized a finding that the investigating officer's request was not with any language, tone, or accompanying gesture such that a reasonable person would have believed that his or her freedom of movement was restrained to a degree associated with a formal arrest." *Id.* at 658-59 (1).

Jacobs suggests that he was in custody based on the officer's "command" for him to leave the apartment under threat of the officer securing an arrest warrant. But we have held that a threat to obtain a search warrant does not amount to such coercion and duress so as to invalidate a suspect's consent to the search. *See Farley v. State*, 195 Ga. App. 721, 721-22 (394 SE2d 585) (1990). Here, the officer's reference to obtaining a warrant could be seen by Jacobs as a signal that the officer was *not*

8

authorized or prepared to arrest him absent the further steps of obtaining a warrant, at least as long as he stayed in the apartment. We do not find error with the trial court's conclusion that, in the light of the totality of the circumstances, Jacobs was not in custody when he made the statements in question.

2. Jacobs also challenges the trial court's refusal to suppress the results of the chemical testing of his blood, arguing that the court erred in determining that he consented to the test consistent with the Fourth Amendment. We disagree.

The Fourth Amendment of the United States Constitution and Article I, Section I, Paragraph XIII of the Georgia Constitution both protect an individual's right to be free of unreasonable searches and seizures, and apply to the compelled withdrawal of blood and other bodily substances. *See Williams v. State*, 296 Ga. 817, 819 (771 SE2d 373) (2015). Because the extraction of blood is a search within the meaning of the Fourth Amendment, the warrantless extraction of blood is presumed to be invalid, subject only to a few specifically established and well-delineated exceptions, and the State has the burden of showing otherwise. *Williams*, 296 Ga. at 819.

The Supreme Court of the United States recently held that, although the Fourth Amendment permits warrantless breath tests pursuant to the search incident to arrest exception when a suspect is arrested for drunk driving, a warrantless blood test is not

9

similarly permitted. *Birchfield v. North Dakota*, 579 U.S. __, __ (136 S. Ct. 2160, 2184, 195 LEd2d 560) (2016). The Court held that consent to a blood test was invalid where state law imposed criminal penalties for refusal to consent. *Id.* at 2186. However, the sort of implied consent law at issue in *Birchfield* is not at issue here. Georgia's implied consent law does not impose criminal penalties for failure to submit to a blood test, but merely provides for license suspension and evidentiary consequences. *See* OCGA § 40-5-67.1 (b), (d). The Supreme Court in *Birchfield* reaffirmed its general approval of such an implied consent law, specifying, "nothing we say here should be read to cast doubt on" implied consent laws "that impose civil penalties and evidentiary penalties on motorists who refuse to comply." 136 S. Ct. at 2185.[2]

Consent given in response to Georgia's implied consent warning thus remains a valid basis for a warrantless search where it is given freely and voluntarily, including in response to the reading of an implied consent warning that does not

---

[2] Based on this decision, Jacobs has filed a Motion to Remand, arguing that we should direct the trial court to reevaluate the validity of his consent because the Georgia implied consent warning is now erroneous. However, as explained above, the court in *Birchfield* reaffirmed its general approval for implied consent laws such as Georgia's. 136 S. Ct. at 2185. Therefore, assuming Jacobs preserved his argument, we are not persuaded that remand in the light of *Birchfield* is necessary, and we deny Jacobs' motion.

10

threaten a criminal penalty. *See id.*; *Williams*, 296 Ga. at 821. Here, the State invokes the consent exception to the warrant requirement. Therefore, the question before us is whether the State met its burden of proving that Jacobs actually consented "freely and voluntarily." *Williams*, 296 Ga. at 821.

> Historically, we considered a defendant's affirmative response to the reading of the implied consent notice as sufficient to allow a search of his or her bodily fluids without further inquiry into the validity of the defendant's consent. However, *Williams* rejected this per se rule automatically equating an affirmative response to the implied consent notice with actual consent to a search within the meaning of the Fourth Amendment. Instead, courts must now conduct a case-by-case analysis, considering the totality of the circumstances.

*Kendrick v. State*, 335 Ga. App. 766, 769 (782 SE2d 842) (citations omitted).

In conducting a totality of the circumstances analysis, we have considered a host of factors. "A consent to search will normally be held voluntary if the totality of the circumstances fails to show that the officers used fear, intimidation, threat of physical punishment, or lengthy detention to obtain the consent." *Cuaresma v. State*, 292 Ga. App. 43, 47 (2) (663 SE2d 396) (2008). The defendant's affirmative response to the implied consent notice may itself be sufficient evidence of actual and voluntary consent, absent reason to believe the response was involuntary. *Kendrick*, 335 Ga.

11

App. at 771-72.[3] The defendant's failure to express an objection to the test or change his or her mind also is evidence of actual consent. *Id.* at 772. There is, however, no duty to inform suspects of their constitutional right against unreasonable searches. *Kendrick*, 335 Ga. App. at 770. The use of handcuffs does not negate a defendant's ability to give consent. *Id.* And the mere fact that a defendant was visibly intoxicated does not render his consent involuntary. *See State v. Depol*, 336 Ga. App. 191, 198-200 (784 SE2d 51) (2016).

Here, the trial court correctly found under the totality of the circumstances that Jacobs freely and voluntarily consented to the blood test. Jacobs gave an affirmative response to the responding officer's question pursuant to the implied consent notice. Jacobs had been injured, but there was no evidence that his injury impaired his understanding of the situation he faced. Although Jacobs was handcuffed when he voiced his assent to the blood draw, there is no evidence that the officer had unholstered his weapon or employed other shows of force. There is not evidence of a lengthy detention: The evidence showed that Jacobs and the officer spoke for 10 to 15 minutes before the officer arrested him and read him the implied consent warning,

---

[3] Jacobs argues that *Kendrick* does not apply here because the defendant there was not under arrest at the time she was asked to consent. But she was, *see Kendrick*, 335 Ga. App. at 766-67, and *Kendrick* applies.

12

then approximately 15 more minutes passed before they arrived at the fire station. At the fire station, Jacobs reaffirmed his assent before the medic drew his blood.

Of course, Jacobs was intoxicated, as evidenced by this blood test results of more than twice the legal limit for driving. *See* OCGA § 40-6-391(a)(5). But there was no evidence that he was so intoxicated that he was unable to respond appropriately to the officer's questions or appreciate the nature of their interaction. Rather, the officer testified that Jacobs, with some reluctance, walked down a set of stairs, then gave some explanation for the night's events. The officer testified that he concluded that Jacobs was intoxicated based on the gate accident, the odor of alcohol, and statements by Jacobs and his girlfriend to the effect that he had been drinking.

This sort of evidence of intoxication falls short of that shown in *State v. Bowman*, 337 Ga. App. 313 (787 SE2d 284) (2016), in which we upheld a finding that the defendant's response to the implied consent warning was not voluntary based on evidence of severe intoxication: the defendant was so unsteady on his feet that an officer directed him to sit down, vomited to the extent that he seemed to be choking, and generally responded to officers' inquiries to the effect that nothing mattered and he "was going to jail anyway." 337 Ga. App. at 317-18. There, the defendant also had been in an accident significant enough that he suffered a cut to his head. *Id.* at 317.

13

Moreover, in that case we reviewed a trial court's *grant* of a motion to suppress, such that we deferred to the trial court's determination of involuntariness in the absence of record evidence demanding a different finding. *Id*. at 318. Here, the shoe is on the other foot – we are reviewing the *denial* of a motion to suppress – and the evidence does not support a conclusion that Jacobs' response to the implied consent notice was anything but voluntary. We thus affirm the trial judge's denial of the motion to suppress evidence obtained as a result of the blood draw.

*Judgment affirmed. Phipps, P. J., and Dillard, J., concur*.