### A92A0470. WALKER v. THE STATE.
(420 SE2d 17)

JOHNSON, Judge.

James A. Walker III was convicted in probate court of the offenses of speeding and driving with an alcohol concentration of .12 grams percent or more, in violation of OCGA § 40-6-391 (a) (4). He appealed to the superior court pursuant to OCGA § 40-13-28. The superior court made a determination, based on a review of the certified record from the probate court, that Walker was guilty of the offenses. Walker appeals his conviction.

1. Walker contends that his due process rights were violated because he was denied a de novo review of his conviction returned by a non-lawyer judge in the probate court. The scope of review of probate court proceedings required by OCGA § 40-13-28 was recently delineated by the Georgia Supreme Court in *Walton v. State*, 261 Ga. 392 (2) (405 SE2d 29) (1991). The court held: "In enacting OCGA § 40-13-28, the General Assembly provided for a right of appeal 'on the record' to the superior court. Thus, the mandate of the superior courts is to review asserted errors of law in the proceedings below under general appellate principles. The appellant may not raise issues not litigated in the court below, but he is entitled to a review of the record

which ensures that the evidence has been received in conformity with statutory and constitutional standards. . . ." Id. at 394. This review process provides a method for correcting errors of law which may have occurred in the courts of the non-lawyer judges of the probate court. Walker contends that this procedure violates the holding in *North v. Russell*, 427 U. S. 328 (96 SC 2709, 49 LE2d 534) (1976) which held that an accused, subject to possible imprisonment, was not denied due process when tried before a non-lawyer inferior court judge provided a later trial de novo was available under Kentucky's two-tiered system. The U. S. Supreme Court did not hold that a system providing for a trial de novo was the only system which would satisfy due process requirements. The procedure in Georgia provides for a review of the proceedings held before the probate judge. As pointed out in *Walton*: "A review of the record from a court without a law-trained judge has been held to satisfy due process in Arizona, *Palmer v. Superior Court in & For Maricopa County*, 560 P2d 797, 799 (Ariz. 1977) and in Wyoming, *Canaday v. State*, 687 P2d 897, 899 (Wyo. 1984)." *Walton*, supra at 394, n. 5. Therefore Walker's argument that he has been denied due process must fail.

2. Walker enumerates as error that the D.U.I. statutory scheme is unconstitutional. He argues that the intoximeter results should have been excluded from evidence because when OCGA § 40-1-1, which defines "Alcohol Concentration" as "grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath," is read with OCGA § 40-6-391, an evidentiary presumption is created that all people submitted to breath tests to determine alcoholic content have the same lung capacity or blood to air ratio. Thus, he concludes, if a person had an increased or decreased lung capacity, the ratio would be inaccurate. Walker argues that the evidentiary presumption that Walker's lung capacity was "normal" unconstitutionally shifted the burden of proof to the defendant. Walker points us to opinions in several states which have reached this issue, all in the context of jury charges. Charges regarding the use of the blood to alcohol ratio have been held to be harmless so long as they are given in conjunction with a qualifying instruction regarding the inconclusiveness of the ratio. In this case, no jury was present and the court considered the weight to be given to the intoximeter results, as well as other evidence regarding Walker's condition at the time of the arrest. In evaluating the totality of the evidence, it found that Walker committed 1) the act of driving; and 2) that he was "under the influence." Therefore, we find that the state met its burden of proving beyond a reasonable doubt without unconstitutionally shifting the burden to the defendant. See generally *Lattarulo v. State*, 261 Ga. 124 (401 SE2d 516) (1991).

3. Walker further alleges that the trial court erred in admitting the state's radar results. He argues that the state failed to show that

the radar device was approved by the Department of Public Safety, that the device had been certified by a technician possessing at least a Second Class Radiotelephone License from the Federal Communications Commission, that the device passed accuracy tests before and after the officer's tour of duty and that test results were recorded and maintained in accordance with *Wiggins v. State*, 249 Ga. 302, 304 (290 SE2d 427) (1982). At trial, the arresting officer testified that he was certified to use radar and introduced a copy of the certification of the radar device in his patrol car indicating that it had been tested in accordance with the requirements of the Department of Public Safety. He further testified that regularly maintained records of calibrations indicate that the radar was properly calibrated several hours prior to the arrest, but was not asked whether he tested it at the end of his shift. The absence of evidence regarding this element is harmless and we find that the evidence substantially complies with the requirements set forth in *Wiggins*.

Walker objected to the copy of the certification on best evidence and hearsay grounds. The documents were admissible under OCGA §§ 24-7-20, 24-5-26 and 24-3-14, as well as *Wiggins,* supra. See also *Williamson v. State*, 194 Ga. App. 439, 440 (3) (390 SE2d 658) (1990).

Walker also argues that the state failed to show that the radar was not operated within 500 feet of a radar speed device warning sign. He argues that OCGA § 40-14-6 applies to state law enforcement agencies as well as county and municipal law enforcement agencies. In *Carver v. State*, 199 Ga. App. 842-843 (406 SE2d 236) (1991), this court reviewed OCGA § 40-14-7 regarding the visibility of radar equipped vehicles. "It is also important to note that between the Supreme Court's decision in *Wiggins* in 1982 and January 27, 1990, when Carver was issued a citation for speeding, the General Assembly changed the conditions for admissibility for citations issued by state officers by making the requirement that the vehicle be visible to approaching motorists for at least 500 feet applicable only to 'county, municipal, college, or university law enforcement officers.'" *Carver* at 842. Since the language regarding law enforcement agencies in OCGA § 40-14-7 is identical to that of OCGA § 40-14-6, the same logic must be applied. The state was not required to show that a radar device was not operating within 500 feet of a warning sign. We find that OCGA § 40-14-6 is not applicable to state law enforcement officers and therefore the absence of this evidence would not invalidate the radar evidence.

4. Walker next contends that the trial court erred in admitting the results of the state's test of Walker's breath conducted on an Intoximeter 3000 breathalyzer machine. Walker asserts that the foundation laid by the state prior to the introduction of evidence regarding the machine was improper. Specifically he asserts that no evidence

was presented that the machine had been calibrated in accordance with rules promulgated by the Georgia Bureau of Investigation. These issues were raised in *Harris v. State*, 199 Ga. App. 457, 458-459 (4) (405 SE2d 501) (1991), in which it was held "the defendant's challenge to the reliability of the test results did not affect their admissibility under these circumstances, but went merely to the weight to be placed on them. . . ." (Punctuation and citations omitted.) Id. at 459. We find *Harris* to be dispositive of this issue.

Walker argues that the state's evidence failed to establish that Walker was advised of his right to an independent test as required by OCGA § 40-6-392 (a) (4). This is contrary to the evidence presented at trial. The arresting officer testified that he read Walker the Implied Consent Warning card. "Sworn testimony by the officer that such advice was given constitutes a prima facie showing of compliance." *Snelling v. State*, 176 Ga. App. 192, 193 (1) (335 SE2d 475) (1985). Walker offered no evidence to rebut the officer's testimony, and no objection to the evidence was raised. Therefore we find no merit to the errors raised in this division.

5. Finally, Walker asserts that his conviction should be reversed because of insufficiency of the evidence. The evidence showed that Walker was driving at a rate of speed of 70 mph in a 55 mph zone and that the results of the intoximeter test indicated a .16 grams percent blood-alcohol ratio. Considered in the light most favorable to the judgment of the trial court sitting as trier of fact, the evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Walker was guilty of the offenses charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Carley, P. J., and Pope, J., concur.*

DECIDED MAY 28, 1992 —
RECONSIDERATION DENIED JUNE 11, 1992 — ▮▮▮▮▮▮▮

*Virgil L. Brown & Associates, Virgil L. Brown, Eric D. Hearn, Bentley C. Adams III,* for appellant.

*W. Fletcher Sams, District Attorney, Randall K. Coggin, Assistant District Attorney,* for appellee.