A97A1633. GUTIERREZ v. THE STATE.
(491 SE2d 898)

JOHNSON, Judge.

After a bench trial, Gary Gutierrez was convicted of driving under the influence of alcohol. He appeals.

1. Gutierrez contends the trial court erred in admitting Intoxilyzer 5000 test results when the state failed to show that the machine on which the breath test was performed had all of its parts attached and in good working order. See OCGA § 40-6-392 (a) (1) (A). We disagree.

For a chemical analysis of a person's breath to be valid under OCGA § 40-6-392 (a) (1) (A), the test must have been conducted on a machine which was operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order. A trooper with the Georgia State Patrol, who was responsible for servicing and training personnel to operate the Intoxilyzer 5000, testified that he inspected the machine on December 1, 1994, ten days before Gutierrez was tested; maintenance records verifying this inspection were admitted into evidence. The trooper explained that the inspection procedure includes a diagnostic check and that during the check, "[i]f [the machine] fails in any way, we get a printout saying it fails. It tells us what part of the instrument failed." When asked by the court whether there were any indications that the machine was not functioning properly, the witness responded that there were not. The state trooper also testified that the manufacturer provided a certificate stating that the machine had been calibrated and was working properly when it was sent to the local police department. He added that the officer who initially set up the machine in August 1994 verified that it was working properly at that time. No witness suggested that any part of the machinery was missing or the machine was not functioning properly. Accordingly, the state sufficiently proved that the machine was operated with all its components properly attached and in good working order at the time Gutierrez took the test. See generally *Bazemore v. State*, 225 Ga. App. 741, 744 (2) (484 SE2d 673) (1997).

We are not persuaded by Gutierrez's argument that the test results were inadmissible because the inspection did not include tests to determine whether machine components designed to detect the presence of interfering substances were working properly. As discussed above, there was no evidence that the machine was not working properly in this or any other respect. Indeed, the diagnostic test did not indicate that any part of the machine was not operating properly. In any event, the fact that a testing procedure has some margin for error or may give an erroneous result under certain circumstances relates to the weight, rather than the admissibility, of the test results. See *Lattarulo v. State*, 261 Ga. 124, 126 (3) (401 SE2d 516) (1991); see generally *Walker v. State*, 204 Ga. App. 559, 562 (4) (420 SE2d 17) (1992).

Finally, contrary to Gutierrez's argument, the fact that the officer who operated the Intoxilyzer 5000 did not know how to calibrate it is of no consequence since he was only responsible for operating the machine. We note that counsel for Gutierrez stipulated that the officer was qualified to operate the machine and that he did so in accordance with his training. The equipment operator is not required to have an expert's knowledge of how the machine works. See *Dotson*

*v. State*, 179 Ga. App. 233, 234 (2) (345 SE2d 871) (1986). The trial court did not err in admitting the test results.

2. Gutierrez claims the trial court erred in admitting the breath test results because the implied consent warning given was "misleading, coercive, deceptive, and misstated the true and legitimate consequences of both the refusal and submittal" to the test. Gutierrez says the officer misinformed him by telling him that his license would be suspended if he refused to submit to chemical tests and may be suspended if he submitted and results indicated a blood-alcohol concentration of .10 grams or more. He argues that no suspension could occur unless the officer subsequently followed the proper administrative procedure for suspension, which she failed to do. See OCGA § 40-5-67.1 (f). This enumeration is patently without merit.

OCGA § 40-5-67.1 (b) (2) provides that a suspect's license will be suspended if the driver refuses to submit to testing and may be suspended if he does submit and is found to have a blood-alcohol concentration of .10 grams or more. Thus, license suspension is a true and legitimate consequence of refusing to submit to or submitting and failing the test. There is no unlawful coercion where the officer merely informs the arrestee "of the permissible range of sanctions" that the state may ultimately be authorized to impose. *Whittington v. State*, 184 Ga. App. 282, 283-284 (2) (361 SE2d 211) (1987). Gutierrez was correctly informed that the state would be permitted to suspend his license for a refusal or an adverse result on the test. The fact that his license was not ultimately suspended does not mean he was not informed of the true and legitimate consequences of his refusal or performance on the test. There was no error. See generally *Pryor v. State*, 182 Ga. App. 79, 80 (2) (354 SE2d 690) (1987).

*Judgment affirmed. Pope, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED SEPTEMBER 9, 1997 — 

*William C. Head*, for appellant.
*Tommy K. Floyd, District Attorney, Thomas R. McBerry, Blair D. Mahaffey, Assistant District Attorneys*, for appellee.