A08A1803. THE STATE v. QUEZADA.
(672 SE2d 497)

MILLER, Chief Judge.

In this DUI case, the State appeals from the trial court's grant of Nicole Quezada's motion to suppress the results of her breathalyzer test. Finding that the trial court misinterpreted the relevant law, we reverse.

"When reviewing a ruling on a motion to suppress, where, as here, the evidence is uncontroverted and there exists no question regarding witness credibility, we review de novo the trial court's application of the law to the facts presented." (Citation omitted.) *State v. Torres*, 290 Ga. App. 804, 805 (660 SE2d 763) (2008).

The record shows that at approximately 1:30 a.m. on August 8, 2007, Officer Chris Knight of the Canton Police Department stopped a vehicle driven by Quezada. When Quezada opened her window, Knight smelled alcohol and noticed that Quezada's eyes appeared glassy and bloodshot. In response to questions from Knight, Quezada stated that she was coming from a nearby restaurant, where she had consumed two 16-ounce beers and a shot of vodka.

Knight administered field sobriety tests to Quezada and, based on the results of those tests, arrested Quezada for DUI. At the time of Quezada's arrest, Knight read her Georgia's implied consent notice, which asked Quezada to submit to chemical testing of her blood. That notice also informed Quezada that if she refused such testing (1) her Georgia driver's license would be suspended for at least one year; and (2) her refusal could be introduced against her at trial as circumstantial evidence of her guilt. See OCGA § 40-5-67.1 (b) (2).

---

[11] See *Brandon*, supra at 205 (3).

After Quezada refused to submit to chemical testing of her blood, Knight transported her to the Canton police station and placed her in a holding cell. Knight then went ahead and prepared the intoxilyzer at the jail, telling Quezada that if she changed her mind, she could still submit to a breath test.[1] Knight then filled out the form for suspending Quezada's driver's license pursuant to OCGA § 40-5-67.1 (b) (2). When Knight advised Quezada that he needed her signature on that form, Quezada told him that she had "changed her mind" and would take the breath test. Knight took two breath samples from Quezada within a five minute period, and both samples showed that Quezada had a blood alcohol level above the legal limit of 0.08 grams.[2] See OCGA § 40-6-391 (a) (5). Quezada was subsequently charged with DUI-per se (OCGA § 40-6-391 (a) (5)), DUI-less safe (OCGA § 40-6-391 (a) (1)), driving with a suspended license (OCGA § 40-5-121), and following too closely (OCGA § 40-6-49).

Prior to trial, Quezada moved to suppress the results of her breath tests, arguing that she did not voluntarily consent to the same. At the motion to suppress hearing, Quezada testified that she changed her mind and agreed to the breathalyzer test after Knight repeatedly asked her to do so, explaining "I just felt that I . . . wasn't going to get out of there [the jail] unless I did it." On rebuttal, Knight testified that he did not repeatedly ask Quezada to take the test but instead merely told her that, if she changed her mind, she could take the breath test. Knight further stated that he did not threaten Quezada to get her to take the test nor did he offer her a benefit or other inducement to submit a breath sample.

The trial court credited Knight's testimony, finding that nothing in the evidence indicated that Quezada was coerced or threatened into submitting to the chemical tests. The trial court nevertheless granted Quezada's motion to suppress, based on Quezada's refusal, at the time of her arrest, to submit to chemical testing. The State now appeals from the trial court's order.

The question in this case is whether Quezada rescinded her initial refusal to submit to a breath test. In granting the motion to suppress, the trial court relied on *Howell v. State*, 266 Ga. App. 480 (597 SE2d 546) (2004), interpreting that decision as holding that once a suspect has refused to submit to chemical testing, the State may not thereafter ask the suspect a second time if she will submit

---

[1] Knight testified that this process represented his usual practice in all DUI cases where a suspect has initially refused to submit to chemical blood testing.

[2] The first sample showed that Quezada's blood alcohol level was 0.191 grams and the second showed a blood alcohol level of 0.178 grams.

to such testing. *Howell*, however, does not stand for such a proposition.

Like Quezada, the suspect in *Howell* had unequivocally refused to submit to chemical testing after being read Georgia's implied consent notice at the time of his arrest. Id. at 482. After being transported to jail, however, the suspect was told to blow into the intoxilyzer without any further discussion. Following the trial court's denial of his motion to suppress the test results, Howell appealed. This Court reversed, but in so doing we explicitly rejected the argument that "in order for rescission of a refusal to submit to state testing to be effective, the defendant must affirmatively request that a test be given." Id. at 485 (1) (b). Instead, we suppressed the test results because *"[t]here [was] no evidence Howell was asked a second time whether he would consent to a state-administered test* and [therefore] no evidence that he rescinded his refusal and thereafter consented [to such a test]." (Emphasis supplied.) Id. at 482 (1) (a). Rather, Howell "was . . . administered a breath test simply because he did not refuse to cooperate" — i.e., because he did not affirmatively renew his refusal to submit to the test. (Footnote omitted.) Id.

Moreover, *Howell* recognized that a police officer may attempt to persuade a suspect to rescind her initial refusal to submit to chemical testing, so long as any "procedure utilized by [an] officer in attempting to persuade a defendant to rescind his refusal [is] fair and reasonable." Id. at 485 (1) (b). The Court concluded, however, that "[m]erely sitting the defendant down and telling him that he needs to blow into the machine . . . can hardly be considered a fair and reasonable procedure." Id.

In *Stapleton v. State*, 279 Ga. App. 296 (630 SE2d 769) (2006), this Court held that police conduct similar, if not identical, to Knight's met the "fair and reasonable" requirement set forth in *Howell*. The suspect in that case also refused at the time of her arrest to submit to chemical blood tests. After transporting Stapleton to jail, an officer prepared the jail's intoxilyzer and "asked Stapleton, 'at this time would you like to take the State's test(?)' " 279 Ga. App. at 296. Stapleton consented, but later moved to suppress the results of that test on the grounds that she had not validly rescinded her initial refusal to submit to the same. Id. at 297 (1). The trial court denied that motion, and this Court affirmed, reasoning:

> Although Stapleton clearly refused to take a breath test when asked at the scene, she rescinded that refusal by agreeing to take the test at the police station. No evidence was presented showing that the officer coerced or threatened Stapleton to take the test or that Stapleton was

intimidated in any way by the officer's request. Under these circumstances, we cannot hold that the officer acted unreasonably when he again asked Stapleton to take a breath test following her initial refusal at the scene.

(Citations omitted.) Id.

Similarly, Knight also prepared the jail's intoxilyzer and either asked Quezada if she wanted to submit to chemical testing or told her that she could take the test if she changed her mind. Quezada, by her own admission, then "changed her mind" and agreed to take the test,[3] in the absence of any threats or inducements by Knight. In light of *Stapleton*, therefore, we conclude that Knight did not act unreasonably and that the trial court erred in granting Quezada's motion to suppress. Accordingly, we reverse the trial court's order.

*Judgment reversed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JANUARY 13, 2009.

*David L. Cannon, Solicitor-General, Barry W. Hixson, Assistant Solicitor-General*, for appellant.
*Allman & Peters, James P. Peters*, for appellee.

---

[3] We note that Quezada's change of heart occurred when she was confronted with the fact of an automatic driver's license suspension. We find it plausible that, given the lapse of time since her arrest and initial refusal to submit to testing, a suspect might change her mind, hoping that during that time her blood alcohol level had dissipated.