**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 15, 2016**

# In the Court of Appeals of Georgia

A16A1233. THE STATE v. CLAY.

MCMILLIAN, Judge.

The State appeals the trial court's order granting Henry Franklin Clay's motion to suppress the results of a state-administered chemical blood test, arguing that the trial court erred in finding that Clay did not voluntarily consent to the test. For the reasons that follow, we agree and reverse.

"On appeal from a ruling on a motion to suppress, we construe the evidence most favorably to affirming the trial court's factual findings and judgment." (Citation and punctuation omitted.) *Jacobs v. State*, __ Ga. App. __ (Case No. A16A1115, decided Sept. 29, 2016). "[T]he trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous." (Citation and punctuation

omitted.) Id. However, "[t]he trial court's application of the law to undisputed facts is subject to de novo review." Id.

So viewed, the record shows that between 2:00 a.m. and 3:00 a.m. on March 14, 2015, a Savannah-Chatham Metropolitan police officer responded to a call regarding a motor vehicle accident. Upon arrival at the scene of the accident, the officer discovered that a vehicle driven by Clay had apparently "t-boned" a stalled vehicle that had run out of gas while attempting to make a left-hand turn onto Old Montgomery Road from East Montgomery Crossroads. The officer located Clay inside his vehicle, and when Clay complained of pain in his shoulder, the officer called for EMS assistance.[1]

While waiting on EMS to arrive, the officer observed that Clay smelled very strongly of an alcoholic beverage, that his words were slurred, and that his eyes were glassy. Clay admitted that he had been drinking that evening, although his answers regarding when and how much he had consumed changed throughout the conversation. When EMS arrived, the officer noticed that Clay was unsteady on his feet as he climbed into the back of the ambulance. Once Clay was seated in the ambulance, he declined to have EMS treat him for any injuries.

_____

[1] There is no video recording of the encounter between the officer and Clay.

2

Based on her observations, the officer determined that she should administer field sobriety testing on Clay to determine if he was intoxicated. Clay consented to the testing, but due to the weather and road conditions, the officer decided to forego the one-leg stand and walk-and-turn tests and only conducted the horizontal gaze nystagmus test. Because she noted that Clay had a lack of smooth pursuit in both eyes, nystagmus at maximum deviation in both eyes, and the onset of nystagmus prior to 45 degrees, the officer believed that Clay was under the influence of alcohol to the point that he was unsafe to operate a motor vehicle. She then asked Clay if he would consent to a preliminary breath test on scene, and he agreed. Based on those results, Clay was placed under arrest.[2]

After his arrest, the officer immediately read Clay the Georgia implied consent warning for suspects over the age of 21 – based on the date of birth provided on his drivers license.[3] In response, Clay stated, "so you're going to draw my blood, all

---

[2] Clay was not placed in handcuffs at this time.

[3] Georgia's implied consent notice for suspects over 21 is found in OCGA § 40-5-67.1 (b) (2) and states:
> Georgia law requires you to submit to state[-]administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs. If you refuse this testing, your Georgia driver's license or

right, I'll submit." Before drawing his blood, EMS personnel asked Clay if he consented and he said yes. Clay then signed an electronic consent form provided by EMS.[4] The EMS personnel proceeded to withdraw Clay's blood without incident. Clay was later charged with driving under the influence of alcohol (per se)[5] and driving under the influence of alcohol (less safe).[6]

---

privilege to drive on the highways of this state will be suspended for a minimum period of one year. Your refusal to submit to the required testing may be offered into evidence against you at trial. If you submit to testing and the results indicate an alcohol concentration of 0.08 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year. After first submitting to the required state tests, you are entitled to additional chemical tests of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit to the state[-]administered chemical tests of your (designate which tests) under the implied consent law?

[4] On appeal, Clay argues that the trial court excluded evidence that the EMS personnel also obtained his consent. However, the record shows that the trial court excluded a print out of the electronically signed consent form, but also stated, "but I have heard [the officer's] testimony about what she saw and what she heard, so I will take that into consideration."

[5] See OCGA § 40-6-391 (a) (5).

[6] See OCGA § 40-6-391 (a) (1).

4

Prior to trial, Clay moved to suppress the results of the state-administered chemical blood test. At the motion hearing, the State presented the testimony of the arresting officer, who testified that throughout the encounter with Clay, she spoke in a calm tone of voice and was not threatening or violent. She did not observe anything that led her to believe that Clay was unable to make a decision on his own. The officer also testified that Clay never attempted to withdraw his consent and that Clay orally consented to the EMS personnel's request to take his blood and that he signed a separate consent form.

In its December 31, 2015 order granting Clay's motion to suppress, the trial court noted that Clay agreed to submit to the blood test and that he was not threatened in any way and did not show any physical resistance. Nonetheless, the trial court determined that there is "nothing in the totality of circumstances, and taking into consideration that a suspect could feel concerned about refusing because of the possibility of losing a limited permit, among other reasons, to suggest that the defendant did anything more than acquiesce to the blood draw." The trial court further found that "there was no apparent additional conversation or interaction with regard to the test to indicate that actual consent was sought or given," such that

5

Clay's consent was insufficient pursuant to *Williams v. State*, 296 Ga. 817 (771 SE2d 373) (2015). This appeal followed.

The Fourth Amendment of the United States Constitution and Article I, Section I, Paragraph XIII of the Georgia Constitution protect an individual's right to be free from unreasonable search and seizures, including the compelled withdrawal of blood. See *Williams*, 296 Ga. at 819. Thus, the warrantless extraction of blood is presumed to be invalid, subject only to a few specifically established exceptions. Id. Here, the State invokes the consent exception to the warrant requirement. "Historically, we considered a defendant's affirmative response to the reading of the implied consent notice as sufficient to allow a search of his or her bodily fluids without further inquiry into the validity of the defendant's consent." (Citations omitted.) *Kendrick v. State*, 335 Ga. App. 766, 769 (782 SE2d 842) (2016). However, in *Williams*, our Supreme Court rejected a rule automatically equating an affirmative response to Georgia's implied consent notice with actual consent to a search within the meaning of the Fourth Amendment. 296 Ga. at 819. "Instead, courts must now conduct a case-by-case analysis, considering the totality of the circumstances." *Kendrick*, 335 Ga. App. at 769.

In conducting a totality of the circumstances analysis, Georgia courts have considered a variety of facts. "A consent to search will normally be held voluntary if the totality of the circumstances fails to show that the officers used fear, intimidation, threat of physical punishment, or lengthy detention to obtain the consent." (Citation and punctuation omitted.) *Jacobs*, __ Ga. App. at ___. And a "defendant's affirmative response to the implied consent notice may itself be sufficient evidence of actual and voluntary consent, absent reason to believe the response was involuntary." (Citation omitted.) Id. (defendant's failure to express an objection to the test or change his mind is also evidence of actual consent).

In this case, the trial court found that Clay "was not threatened in any[ way] and did not show any physical resistance," and we find ample evidence in the record to support this conclusion. However, the trial court further found that "*a suspect could* feel concerned about refusing [the test] because of the possibility of losing a limited permit" to support its conclusion that Clay only acquiesced to the blood draw. (Emphasis supplied.) But nothing in the record supports that Clay ever expressed any concern or even considered the possibility of losing his driving privileges during this encounter. Although it is appropriate for the trial court to consider "whether a reasonable person would feel free to decline the officers' request," nothing in our

jurisprudence allows the trial court to speculate about how a hypothetical (and possibly unreasonable) suspect might feel under the circumstances. See *State v. Williams*, 337 Ga. App. 791, 796 (788 SE2d 860) (2016) (citation and punctuation omitted).

Moreover, our Court has recently declined to find that the reading of the implied consent notice is coercive in and of itself because "there is no unlawful coercion where, as here, the officer merely informs the arrestee of the permissible range of sanctions that the State may ultimately be authorized to impose." (Citation and punctuation omitted.) *State v. Young*, __ Ga. App. __ (Case No. A16A1435, decided Nov. 2, 2016). See also *Gutierrez v. State*, 228 Ga. App. 458, 460 (2) (491 SE2d 898) (1997). This is consistent with the United States Supreme Court's recent pronouncement in this area in *Birchfield v. North Dakota*, 579 U.S. __ , (VI) (136 SCt 2160, 195 LE2d 560) (2016), which struck down state statutes making it a crime to refuse to submit to a blood test. *Birchfield* made it clear that the Court is approving of "the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply." Id. at ___. See also *Missouri v. McNeely*, __ U.S. __ (133 SCt 1552, 185 LE2d 696) (2013). Accordingly,

8

the trial court erred as a matter of law in placing any weight on what a hypothetical suspect might feel about how a refusal could affect his driving privileges.

And with respect to the trial court's finding that "there was no apparent additional conversation or interaction with regard to the test to indicate that actual consent was sought or given," not only is this finding questionable in light of the officer's testimony that EMS personnel obtained Clay's consent, both orally and in writing, we find no support in our case law that requires the State to provide evidence of any such additional conversation or interaction to demonstrate actual consent.[7] As this Court has recently explained, "[w]e do not read *Williams'* rejection of a per se rule of consent under the implied consent statute as authorizing us to replace it with its opposite – that is, a per se rule that the State must always show more than consent under the implied consent statute." (Citation and punctuation omitted.) *State v. Reid*, 337 Ga. App. 77, 78 (786 SE2d 694) (2016) (reversing trial court's grant of motion

---

[7] We are unpersuaded by Clay's argument on appeal that because he responded to the officer's implied consent notice with "I'll submit" and did not use the word "consent," he merely acquiesced to the request. We specifically note that Georgia's implied consent statute ends with the question, "*Will you submit* to the state[-]administered chemical tests of your (designate which tests) under the implied consent law?" (Emphasis supplied.) OCGA § 40-5-67.1 (b) (2). That Clay listened to the statutory advisement and responded using the same verbiage does not dispose of the issue of whether Clay voluntarily consented or acquiesced; under *Williams*, we must consider the totality of the circumstances.

9

to suppress where there was no evidence defendant's consent was anything but free and voluntary). Accordingly, where there is no evidence that Clay's consent was anything but free and voluntary, the trial court erred in granting the motion to suppress. See *Young*, __ Ga. App. at __ (reversing grant of motion to suppress because State met its burden of proving defendant voluntarily consented to test where she immediately verbally agreed to submit and there is no evidence of coercive circumstances that would undercut voluntariness of her consent). See also *State v. Domenge-Delhoyo*, 338 Ga. App. 439, 447 (1) (790 SE2d 139) (2016) (physical precedent only).

*Judgment reversed. Miller, P. J., and McFadden, J., concur.*