**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RICKMAN and MARKLE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 6, 2019**

# In the Court of Appeals of Georgia

A18A1623. THE STATE v. BADDELEY.

RICKMAN, Judge.

The State appeals from the trial court's decision to suppress the results of a chemical blood test in this action arising out of an automobile collision. For the reasons that follow, we reverse.

"In reviewing a trial court's ruling on a motion to suppress, this Court must construe the record in the light most favorable to the factual findings and judgment of the trial court and accept the trial court's findings of disputed fact unless they are clearly erroneous." (Citations omitted.) *State v. Turner*, 304 Ga. 356 (818 SE2d 589) (2018). "An appellate court also generally must limit its consideration of the disputed facts to those expressly found by the trial court." *Caffee v. State*, 303 Ga. 557, 557 (814 SE2d 386) (2018). However, "the trial court's application of the law to

undisputed facts is subject to de novo review." (Citations and punctuation omitted.) *State v. Clay*, 339 Ga. App. 473 (793 SE2d 636) (2016).

So viewed, the evidence at the suppression hearing shows that a trooper with the Georgia State Patrol investigated the scene of a collision in Madison County involving a Ford Focus and a Jeep. Thereafter, the trooper located Baddeley, the 63-year-old driver of the Jeep, at St. Mary's Hospital in a room in the emergency department. The trooper observed that Baddeley had bloodshot, watery eyes and slow and slurred speech. The trooper also detected a strong odor of alcohol coming from Baddeley's breath as he talked. The trooper then administered the horizontal gaze nystagmus test and obtained six clues suggesting impairment. The trooper placed Baddeley under arrest without taking him into custody, read him the Georgia Implied Consent Notice, and asked Baddeley to agree to a blood test. Baddeley refused; the trooper testified that Baddeley said he did not want to take the test, that he "[s]hook his head."

Thereafter, the trooper prepared a driver's license suspension form, presented it to Baddeley, and explained that by refusing to submit to the blood test, his license would be suspended but that the form functioned as a temporary permit. In so doing, the trooper told Baddeley that if he did not submit, the trooper wound "yank"

2

Baddeley's license "as of then." Baddeley then changed his mind and consented to the test, and the test ensued. On direct examination by his own attorney, Baddeley testified that he changed his mind in part because the trooper said that he was going to "yank" Baddeley's license. He also testified that he changed his mind because he felt "very intimidated" by the trooper's "body language and the way he was looking at me." Baddeley did not recall telling the trooper that he felt intimidated. Baddeley did not further testify about the trooper's body language or demeanor.

Based on these facts, the trial court held that the totality of the circumstances showed that "the defendant was intimidated and coerced into changing his mind and that his agreement to take the [State-administered blood] test was not voluntary or actual consent." In so doing, the court found that Baddeley testified that "the Trooper's demeanor changed when [Baddeley] refused [to take the test]." On appeal, the State contends the trial court erred as a matter of law.

"The Fourth Amendment of the United States Constitution and Article I, Section I, Paragraph XIII of the Georgia Constitution protect an individual's right to be free from unreasonable searches and seizures, including the compelled withdrawal of blood." *Clay*, 339 Ga. App. at 475. "Thus, the warrantless extraction of blood is presumed to be invalid, subject only to a few specifically established exceptions,"

3

including voluntary consent, for which the State has the burden of establishing actual consent. Id.; see also *Williams v. State*, 296 Ga. 817, 821-822 (771 SE2d 373) (2015). Thus, "mere compliance with statutory implied consent requirements does not, per se, equate to actual, and therefore voluntary, consent on the part of the suspect so as to be an exception to the constitutional mandate of a warrant." Id. at 822. Rather, "the State has the burden of proving that the accused acted freely and voluntarily under the totality of the circumstances." (Citation and punctuation omitted.) Id. at 821. The test is objective: "the court should consider whether a reasonable person would feel free to decline the officers' request to search or otherwise terminate the encounter. Mere acquiescence to the authority asserted by a police officer cannot substitute for free consent." (Citation and punctuation omitted.) *State v. Young*, 339 Ga. App. 306, 311 (793 SE2d 186) (2016); see also *Florida v. Jimeno*, 500 U.S. 248, 251 (111 SCt 1801, 114 LE2d 297) (1991) ("The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness.").

The totality of the circumstances includes factors such as "prolonged questioning; the use of physical punishment; the accused's age, level of education, intelligence, length of detention, and advisement of constitutional rights; and the psychological impact of these factors on the accused." *State v. Austin*, 310 Ga. App.

814, 817-818 (1) (714 SE2d 671) (2011). In applying these factors to the facts of specific cases, courts have reached several conclusions:

> A consent to search will normally be held voluntary if the totality of the circumstances fails to show that the officers used fear, intimidation, threat of physical punishment, or lengthy detention to obtain the consent. And a defendant's affirmative response to the implied consent notice may itself be sufficient evidence of actual and voluntary consent, absent reason to believe the response was involuntary.

(Citations and punctuation omitted.) *Clay*, 339 Ga. App. at 475. Further, "there is no unlawful coercion where . . . the officer merely informs the arrestee of the permissible range of sanctions that the State may ultimately be authorized to impose," and "license suspension is a true and legitimate consequence of refusing to submit to or submitting and failing the test." (Punctuation omitted.) *Gutierrez v. State*, 228 Ga. App. 458, 459 (2) (491 SE2d 898) (1997) (Citation and punctuation omitted). See also *Young*, 339 Ga. App. at 311-312 (same).

Here, there are no objective facts in the transcript upon which the trial court was authorized to conclude that a reasonable 63-year-old person would not feel free to decline the trooper's request for a blood test. Indeed, Baddeley initially refused to take the test, which reflects that he knew he had a right to do so. The only purported

5

evidence to the contrary is that Baddeley felt intimidated by the trooper's "body language and the way he was looking at [him]." But Baddeley did not describe the relevant body language or demeanor in any way. And the trial court's finding that "the Trooper's demeanor changed when [Baddeley] refused [to take the test]" is wholly unsupported by the record and therefore clearly erroneous. There is no testimony about the trooper's demeanor nor a change in it. All we have is Baddeley's subjective feeling of intimidation. Although the trooper testified that Baddeley became argumentative at one point, there is no evidence regarding the topic of that argument or whether it contributed to Baddeley's feeling of intimidation.

Finally, the use of the word "yank," without more, is insufficient to show coercion. Cf. *Humphries v. State*, 327 Ga. App. 542, 544 (759 SE2d 611) (2014) ("If a person has declined to submit to a state-administered test, officers are allowed to use "fair and reasonable" methods of persuasion to get them to rescind the refusal."). Used in this manner, "yank" has been defined as "[to] remove abruptly"[1] or "to remove abruptly and unceremoniously,"[2] and under the applicable statute, the law

---

[1] See https://www.thefreedictionary.com/yank, citing the American Heritage Dictionary of the English Language, 5th Edition.

[2] https://www.thefreedictionary.com/yank, citing Random House Kernerman Webster's College Dictionary, (2010).

enforcement officer takes possession of the driver's license "at the time of the person's refusal." OCGA § 40-5-67.1 (f) (1). Thus, the trooper accurately told Baddeley that he would take his license abruptly if he refused to comply, as the law provides, which, as shown in *Gutierrez*, 228 Ga. App. at 459 (2), is insufficient to show coercion.

In *State v. Quezada*, 295 Ga. App. 522 (672 SE2d 497) (2009), after being read the implied consent notice, Quezada refused to submit to a chemical test of her blood. Id. at 522. The officer then transported her to the police station, placed her in a cell, and told her that if she changed her mind, she could still submit to a breath test. Id. at 522-523. When the officer then filled out and presented a license suspension form to Quezada, Quezada told the officer that she had "changed her mind" and would take the breath test. Id. at 523. At a hearing on Quezada's motion to suppress, she testified that she only changed her mind after the officer repeatedly asked her to do so because she felt that she would not get out of the jail unless she did. Id. The trial court granted the motion to suppress based on Quezada's initial refusal, and this Court reversed. Id. at 525. We held that because Quezada, by her own admission, "changed her mind and agreed to take the test, in the absence of any threats or inducements," the trial court erred in granting the motion to suppress. Id.

7

The present case is similar. Both the trooper and Baddeley testified that after initially refusing the test, Baddeley "changed his mind," and there was no evidence that he did so as a result of any threats or other coercive techniques. See *Clay*, 339 Ga. App. at 477 (where there is no evidence other than that the consent was free and voluntary, a trial court errs by granting a motion to suppress). Rather, the State showed that Baddeley voluntarily consented to taking the State-administered blood test after being told that he would lose his license if he failed to comply. Accordingly, we reverse.

*Judgment reversed. Markle, J. concurs and McFadden, P. J., dissents.**

* "THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2(a)."

# In the Court of Appeals of Georgia

A18A1623. THE STATE v. BADDELEY.

McFADDEN, Presiding Judge, dissenting.

The majority withholds the deference to which the trial court is entitled. And the majority declares, contrary to law, that a defendant whose consent was in fact secured by intimidation may not be found to have been intimidated if — in the opinion of the appellate court — a reasonable person would not have been intimidated. So I respectfully dissent.

About intimidation, appellee Baddeley testified at the suppression hearing that after initially declining the blood test, he changed his mind "when [the trooper] come into the room and he said if I didn't consent to the blood test, then, he was going to yank my license. . . . I did feel intimidated, very intimidated because by his body language and the way he was looking at me, you know." Baddeley reiterated in subsequent testimony that he changed his initial refusal to take the blood test because he "felt intimidated" by the trooper's "body language" and that the trooper's exact words were that if he did not consent to the test then his driver's "license would be yanked as of then."

At the conclusion of the hearing, the trial court announced that he found Baddeley's testimony persuasive. He found "that Mr. Baddeley felt that he was intimidated or coerced into taking the blood test." In the subsequent and order granting the motion, the trial court noted that he had heard "the testimony of all witnesses as to the facts, both disputed and undisputed," and found under the totality of the circumstances "that [Baddeley] was intimidated and coerced into changing his mind and that his agreement to take the state test was not voluntary or actual consent."

2

We must review those findings deferentially, under the clearly erroneous standard, which is equivalent to the any evidence standard.

> At a hearing on a motion to suppress, the trial judge sits as the trier of fact. On appeal from the grant or denial of such a motion, therefore, this [c]ourt must construe the evidence most favorably to uphold the findings and judgment of the trial court, and that court's findings as to disputed facts and credibility must be adopted unless clearly erroneous. [Moreover,] we owe substantial deference to the way in which the trial court resolved disputed questions of material fact[.]

*Csehy v. State*, 346 Ga. App. 747, 747-748 (816 SE2d 833) (2018) (citations and punctuation omitted). Accord *Bergstrom v. State*, 347 Ga. App. 295 (819 SE2d 84) (2018) (on appeal from a ruling on a motion to suppress, we must defer to the trial court's factual findings and credibility determinations).

But the majority does not defer to the trial court's findings as to disputed facts and credibility determinations. Rather, the majority holds that the trial court's findings fail because, in summarizing Baddeley's testimony, the trial court wrote, "He testified that the Trooper's demeanor changed when he refused, and that he was intimidated by the Trooper." According to the majority, "the trial court's finding that 'the Trooper's demeanor changed . . .' is wholly unsupported by the record and therefore clearly erroneous."

3

I disagree. Construed most favorably to uphold the trial court's findings and judgment, *Csehy*, supra, the evidence showed that Baddeley was lying in a hospital bed when the trooper first requested that he submit to the test and informed him that his license would be suspended if he refused; that Baddeley nevertheless refused the trooper's first request that he submit to the test; that the trooper then left the hospital room and returned a few minutes later with a license suspension form, telling Baddeley that his license would immediately be "yanked" if he did not consent to the test; and that Baddeley then changed his initial refusal and acquiesced to the test because he felt intimidated by the trooper. Contrary to the majority's finding, it is certainly a reasonable interpretation of that evidence that the trooper's demeanor was different when he returned to the hospital room with the license suspension form.

More fundamentally, the trial court did not actually make a factual finding that the trooper's demeanor changed. Rather, the trial court was merely summarizing Baddeley's testimony when he referenced the change in demeanor. The trial court labeled his material factual findings explicitly: "The court finds that the defendant was intimidated and coerced into changing his mind and that his agreement to take the state test was not voluntary or actual consent." Because these controlling findings

4

were unquestionably supported by some evidence, including Baddeley's testimony, we must defer to the court's findings and adopt them on appeal.

The majority also holds, "[t]he test is objective: 'the court should consider whether a reasonable person would feel free to decline the officers' request to search or otherwise terminate the encounter.'" (quoting *State v. Young*, 339 Ga. App. 306, 311 (793 SE2d 186) (2016) and citing *Florida v. Jimeno*, 500 U. S. 248, 251 (111 SCt 1801, 114 LE2d 297) (1991)).

The language the majority quotes is unexceptionable. A factfinder certainly should *consider* how a reasonable person might feel. But the majority mistakenly holds that an objective, reasonable-person test is dispositive. That is not the law. The cases the majority cites do not so hold. *State v. Young* does not address a claim that the defendant was actually intimidated. And *Florida v. Jimeno* addresses the *scope* of a suspect's consent. The issue to be decided in cases like the one before us is not how a hypothetical reasonable person might feel. Rather, it is to determine whether, under the totality of the circumstances, the officer used fear, intimidation, or threats to obtain consent from the individual defendant before the court. *State v. Clay*, 339 Ga. App. 473, 475 (793 SE2d 636) (2016).

5

Another factfinder might well have discounted Baddeley's testimony about the trooper's intimidation. But the trial judge who heard him testify found it credible. And we are bound to defer to that finding. So we must affirm the trial court's judgment.